UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BARBARA WILLIAMS and CRAIG WILLIAMS,
her husband,

                        Plaintiffs,

      v.                                 3:11-cv-445

ARCTIC CAT, INC., ARCTIC CAT, ARCTIC
CAT PRODUCTION, LLC, ARCTIC CAT
PRODUCTION SUPPORT, LLC, ARCTIC CAT
SALES, INC., ARCTIC CAT SHARES SERVICES,
LLC, GANDER MOUNTAIN COMPANY, and
GANDER DIRECT MARKETING SERVICES, LLC,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Plaintiffs Barbara and Craig Williams commenced the instant personal injury action against Defendants arising out of Barbara Williams' operation of an Arctic Cat Prowler XT 650 H1 manufactured by Defendant Arctic Cat and sold by Defendant Gander Mountain. Plaintiffs assert claims for strict product liability, negligence, and breach of warranty. Presently before the Court is Defendants' motion to preclude Plaintiffs' expert and for summary judgment and Plaintiffs' cross-motion to preclude Defendants' experts. Oral argument was heard on September 10, 2012.

**I.    FACTS**

       On March 26, 2007, Plaintiffs purchased a 2007 Arctic Cat Prowler XT 650 H1 bearing Model No. U2007P2S4BUSG and VIN 4UF07MPV97T308306 (hereinafter referrred

to as the "Prowler") from Defendant Gander Mountain.  The Prowler was designed to meet customer demand for a vehicle catering to farmers, ranchers, and hunters.  The Prowler did not come with doors as standard factory equipment, but as optional accessories.  According to Arctic Cat, doors were not included as standard equipment because it would significantly decrease the utility of the vehicle for its primary intended purpose as a utility/work vehicle where frequent stopping and ingress and egrees into and out of the vehicle would occur.  Plaintiffs used the Prowler for farm work, general riding and recreation.  Plaintiff did not purchase the optional doors, but, instead, had a third-party aftermarket soft cab installed on the Prowler.  The soft cab came with doors that Plaintiffs had removed at the time of the accident.  The Prowler contained numerous on-product warning decals and warnings in the Operator's Manual concerning safe operation.  Plaintiff Barbara Williams ("Williams") looked at the owner's manual, but did not read it front to back.  Williams understood that the purpose of the operator's manual was "[t]o make the machine last longer, the safety of it. . . ." Williams Dep. at 120.  Plaintiffs never had any problems with the stability of the Prowler prior to the subject accident.

On March 28, 2008, Williams was operating the Prowler in Port Crane New York on Depot Hill Road.  Williams was driving the Prowler on a public road on her way to a local store.  Williams' daughter, Shelby, was riding in the passenger seat.  Williams claims that she was maneuvering through a downhill, left-hand curve in the road, when a vehicle approached and passed her from behind.  Williams drove the Prowler partially onto the dirt shoulder of the road to avoid the vehicle.  After the vehicle passed, Williams noticed a mailbox in her path of travel.  Williams turned back on to the road to avoid the mailbox.  Williams claims that the shoulder of the road gave way as she attempted to turn back onto

the road.  The Prowler started to pitch forward onto the right, front tire, near where Williams's daughter was sitting.  To counter this force, Williams shifted her weight to the left (extending her head outside the occupant compartment), at which time the Prowler started tipping to the left.  During this process, Plaintiff's left leg came out of the cab.  The Prowler tipped over onto the driver's side and spun 180 degrees.  Williams's leg became pinned under the Prowler and was injured.

Plaintiffs then commenced the instant action against Defendant Arctic Cat, the manufacturer of the Prowler, and Gander Mountain, the retailer where the Prowler was purchased.  Plaintiffs retained Lawrence Feer as their expert.  Feer opined that a side restraint occupant containment system would have prevented Williams's injuries; Wiliams's injuries were foreseeable to Defendant, who had an obligation to provide adequate warnings and not mislead consumers concerning the risks; the Prowler is similar in configuration to other four-wheel ATV's (side-by-sides) having similar experiences with rough terrain, pavements and other hazards associated with driving such vehicles; Defendant failed to offer a side restraint system; and Defendant could have prevented the injury by: (a) using occupant containment, (b) placing a dead pedal in the operator's compartment, (c) designing the operator's seating to take into account people of different sizes, (d) offer doors, hand holds, straps, webbing, devices, kick panels, splash guards and upper extremity restraints, leg guards, or side restraint systems, (e) making a sill higher than the floor, (f) making doors of difference sizes with different hinge locations, (g) making handholds (grab bars), (h) delethalizing the vehicle, (i) making the Prowler crashworthy, (j) making a clear and unambiguous statement as to the increased risk of rollover on pavement, (k) incorporating anthropomorphics, (l) making the floor area lower than the floor sill, (m) balancing the need

for ease of use with protection, (n) evaluating real life usage, (o) examining other manufacturers' designs, (p) restraining occupants, and (q) making adjustable seating. According to Plaintiff, Feer will offer the following opinions:

(1) when a vehicle is designed, safety of the occupant is and should be the primary concern;

(2) the history of ATV's and the accumulated knowledge of the industry must be used and considered when designing and warranting a vehicle;

(3) the history of ATV's indicates that rollovers do in fact occur;

(4) the history of ATVs indicates that extremity injuries are the most common;

(5) in rollovers, occupant containment and protection is an issue that must be recognized and considered;

(6) given the history of ATVs, some sort of side containment and protection device could and should have been developed at the time of the sale which would have protected its occupants, such as half doors, webbing, and extended kick panels;

(7) Plaintiff's use of the vehicle on a country road was a direct result of Defendant's actions;

(8) pavement test drives and completion of a New York State Vehicle Registration/Title Application would mislead consumers into believing that pavement and on-road use of the Prowler was acceptable;

(9) given the lack of any collision damage into the occupant compartment, a side restraint system would have kept Williams's leg contained;

(10) there were a variety of different designs available that would have worked to prevent Williams's injury;

(11) product warnings must be prioritized and be in plain, conspicuous language;

(12) Defendants had an obligation to warn of a substantial rollover risk; and

(13) adequate warnings were not provided.

Presently before the Court is Defendants' motion for summary judgment and to preclude Plaintiff's expert and Plaintiff's motion to preclude Defendants' experts.

## II.     STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Rule 56. It is well settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on

conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III.     DISCUSSION

#### a.     Motion to Preclude Lawrence Feer

Defendants move to preclude Plaintiffs from using Feer on the ground that he is not qualified to testify and that his opinions are unreliable and speculative. In determining the admissibility of expert opinions, the Court must consider whether: (1) the testimony is grounded on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Factors bearing on reliability include: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002). The Court must focus on the principles and methodologies used by the expert, without regard to the conclusions. Amorgianos, 303 F.3d at 266. That being said, conclusions are not completely irrelevant. A court need not admit expert opinion evidence connected to existing data only by the ipse dixit of the expert. Id. "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Amorgianos, 303 F.3d at 267.

Upon review of Feer's background and his proposed opinions, the Court finds that his opinions should be precluded. First, some of his opinions do not require expert testimony as they are within the purview of the trier of fact. For example, whether passenger safety should be a primary concern of the manufacturer is obvious and a trier of fact does not need an expert for this. Secondly, and more importantly, Feer is not qualified to render the vast majority of his opinions. Feer has a Bachelors and Masters Degree in Industrial Design. He teaches in Industrial Design, which is not part of the engineering or science program, but the school of art. Feer is neither an engineer nor a scientist. He has no education or training in mechanical engineering. There is nothing in the record demonstrating that Feer has a background in occupant containment in motor vehicles (or any other vehicles). Although Feer was once involved in a project involving a sixteen wheeled amphibious vehicle and a Baja ATV, his involvement had nothing to do with occupant containment. There similarly is nothing in Feer's background suggesting he has the engineering or physics background to give opinions concerning the design or efficacy of side restraint systems or how such a system may have prevented Plaintiff's injuries in this case. Moreover, there is an absence of anything in the record suggesting that Feer has any particularized knowledge or experience in the field of product warnings. He has neither drafted any warnings nor been involved in any research concerning the effectiveness and/or wording or warnings. He did not provide any alternative language in this case. As such, the Court finds that Feer is not qualified to render his opinions.

Third, the Court finds that Feer's opinions are not sufficiently reliable to be admitted. In his report, Feer lists all the documents, pictures, and videos that he reviewed in forming his opinion. Noticeably absent from his report is any explanation of how he arrived at

his conclusions. For example, Feer stated in his report that "[h]aving reviewed all these materials, I have the professional opinion, to a reasonable degree of certainty, that a side restraint occupant containment system would have prevented the injuries. . . ." While Feer goes through a summary of the history of ATV-related rollovers and claims that Defendant had knowledge of rollover accidents, including Yamaha's experience with the Rhino and Yamaha's ultimate inclusion of side restraint systems, nowhere in the report does Feer explain how or why such a side restraint system could or would have prevented Plaintiff's injuries. Rather, as Plaintiffs stated at oral argument, they rely on "common sense." Feer states in his affidavit in opposition to summary judgment that "[al]] you have to do is look at it and realize that without any sort of side structure, an operator's extremities could and would come out of the occupant area during a rollover." Feer Aff. at ¶ 15. In her opposing memorandum of law, Plaintiff similarly states that "the jury does not need an expert's assistance to determine that the ATV's inadequate side restraint system . . . was the proximate cause of the Williams' injuries." The Court agrees that common sense would dictate that a fully enclosed cab would have prevented Williams's leg from exiting the Prowler during the rollover. To this extent, expert testimony is not needed. The Court disagrees that common sense is sufficient to draw the conclusion that a half door, or the design envisioned by Feer, would have prevented Williams's injuries.

Returning to Feer's opinions, there is no analysis of whether the use of side containment systems, including any such system used by Yamaha, was accompanied by a reduction in the number of injuries caused by extremities falling out of the passenger compartment during a rollover. Feer does state that "Arctic Cat must and could have offered side restraint systems for less than $100.00 and failed to do so until many years later. These

designs were . . . feasible [and] available at the time of the Williams' purchase of the Prowler." Even if we assume that the inclusion of some side restraint system was feasible because they were in existence at the time, Feer does not specify what side restraint systems were available for the Prowler and, importantly, does not explain how or why any such systems would have prevented Plaintiff's injuries.[1]  Feer testified at deposition that a half door or full door may have prevented Plaintiff's injuries, but he also testified that he did not analyze the cost of alternative designs or test any alternative designs to see whether they would have prevented Plaintiff's injuries.  Feer also testified that he did not have any drawings or specifications for any such doors.  Specifically, he stated that "I don't have the answers.  I could make it out of plastic, I could make it out of steel, I could make it out of foam, I could make it out of sandwich, I could make it a lot of different ways.  We have to consider the cost to manufacture, the tooling, the price point and things like that.  All those.  This is just a concept at this point of words."  Feer Dep. at 165.  Feer did not test his concept.  Feer did not point to any tests or studies concerning the use of half doors and their prevention of injuries during the type of rollover at issue here.  Relevant to this conclusion is that Feer did not have knowledge concerning how the accident happened or how fast Williams was driving, issues that likely would be relevant to determining whether an

---

[1] Once again, Plaintiff and Feer rely on "common sense" for this ultimate conclusion.  Given the actual design of the Prowler, including the location of the side wall of the vehicle in relation to the operator's feet (where the pedals are) and the availability of a seat belt and other design features, it is not common sense that a half door would have prevented Plaintiff's injuries, at least without posing other potential hazards.  For example, Williams claimed that she was leaning her head out of the passenger area to counter the Prowler tipping to the right.  When the Prowler then tipped over to the left, it is as much common sense that, if there was a half door, it would have kept Plaintiff's legs in the Prowler, but caused her upper body (including her head) to be thrown out, thereby potentially exposing her to greater injury.  Again, while common sense says that a full containment system would have kept Plaintiff in the Prowler (but posed utility problems), that common sense does not extend to a half door.

alternative design would have prevented the injuries. Succinctly stated, Feer's report is devoid of any factual or analytical basis for his conclusions and whether they would have prevented Plaintiff's injuries. Therefore, Defendants' motion to preclude the testimony of Plaintiff's expert is GRANTED.

    **b.**    **Plaintiffs' Motion to Preclude Defendant's Experts**

Plaintiffs seek to preclude the use of Defendants' experts on various grounds. In ruling on these motions, the Court has disregarded Plaintiff's reply papers as reply papers are not permitted on non-dispositive motions without leave of the Court and no such leave was granted here. With one exception, the Court has reviewed the experts' reports and their educational and work history. The Court finds that they are qualified to render the opinions. They all have extensive related education and practical experience. Moreover, Plaintiffs, who did not depose the experts, fail to demonstrate that the proposed opinions do not have a reliable foundation. Having failed to examine the basis for the experts opinions and how they came up with their conclusions, Plaintiffs have no basis upon which to claim that the expert opinions are without a reliable foundation. Rather, the issues Plaintiffs raise are fit for cross-examination. At this time, Plaintiffs have failed to demonstrate that the testimony of Defendants' experts should be precluded. The exception pertains to Dr. Raphael. The Court finds that a hearing will be necessary concerning the admissibility of her opinions, particularly as to whether Plaintiff was wearing a seatbelt and whether Plaintiff intentionally placed her foot outside of the cab and on the ground.

    **c.**    **Defendants' Motion for Summary Judgment**

        **1.**    **Design Defect**

Defendants move for summary judgment on Plaintiff's design defect claim on the ground that Plaintiffs have failed to provide sufficient evidence, admissible in form, from which a fair minded trier of fact could reasonably conclude that there was a design defect known at the time of manufacture that would inevitably cause harm or that a safer alternative design was available that would tip the risk/utility balance in Plaintiffs' favor. Plaintiffs respond that there is a triable issue of fact because the Prowler was sold without adequate side restraints intended to keep occupants' extremities within the confines of the occupant compartment during a rollover and a $79 side restraint kit was available.

To establish a prima facie case in a strict products liability action predicated on a design defect, a "plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107. "The plaintiff ... is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." Id. "[T]he plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury." Id.

In this case, Plaintiffs do not claim that any design defect in the Prowler caused the accident itself and, if they did, there is insufficient evidence in the record to support such a contention. Rather, Plaintiffs' claim is that the failure to have a side restraint system caused the injuries. Stated otherwise, it is Plaintiff's position that the Arctic Cat was required to include a side restraint system to prevent extremities from exiting the occupant containment area in the event of a rollover. Plaintiffs' design defect claim must be dismissed because

they have failed to demonstrate that Defendants designed an unreasonably safe product. Although Plaintiffs point to substantial evidence concerning rollovers involving ATVs, they do not differentiate between data available for three-wheel ATVs; traditional straddle-type four-wheel ATVs operated with handle bars; and side-by-side four wheel vehicles such as the Prowler (which Defendants assert is a UTV or ROV) that are operated with a steering wheel. There is insufficient evidence suggesting that the statistics identified by Plaintiff (see, e.g., Pl's Ex. F (CPSC study)) are applicable to vehicles such as the Prowler.  Moreover, although Plaintiff discusses issues with a side-by-side vehicle manufactured by Yamaha (the Rhino), Plaintiff points to insufficient evidence in the record suggesting that the Rhino and Prowler are otherwise similar (e.g. centers of gravity, width of wheel base, passenger compartments, passenger restraints, etc).

      Even assuming that Plaintiffs established a design defect by the failure to include a side restraint system, there is insufficient evidence upon which a fair minded trier of fact could reasonably find substantial causation between any such defect and Williams's injuries. There is no dispute that Williams's leg ended up on the outside of the vehicle (either as a result of the rollover or due to her own voluntary conduct) and became trapped under the vehicle, thereby sustaining injury.  There is evidence in the record that the Prowler has some features designed to keep legs within the confines of the cab.  What is absent from the record is sufficient evidence from which it can reasonably be concluded that the absence of a feasible side restraint system caused the injuries.  Stated otherwise, there is insufficient evidence that any of the feasible alternative designs were likely to have prevented the leg injuries.  As noted with the discussion concerning Plaintiff's expert, there was no testing or analysis whether an available side restraint system would have prevented the leg injury in

this case. Although it may seem obvious that some sort of half door or other restraint may have prevented injury to Plaintiff's leg, looking at the current record, any such conclusion would be without a foundation and speculative. None of the parties have information concerning the specifics of how this accident occurred, including the speed Plaintiff was traveling or the degree to which she turned the steering wheel, etc. Thus, there are various unknowns. That being said, there is certain information that is known, such as the stability of the Prowler at various speeds, gravity, the weight of the Prowler, that the Prowler tipped onto the left side, etc. There is no information or testing as to whether any available restraint systems would have contained Plaintiff's leg under the circumstances of this event given the various known factors and taking into consideration a range of the unknown factors. Plaintiff's expert could not articulate the specifics of any alternative design, including its materials, how it would be affixed to the Prowler, its functionality, its strength, its latching system, whether and to what extent his system would withstand impact, etc. Plaintiffs point to no evidence whether their proposed alternative design would have withstood the impact of this accident or not caused another part of Plaintiff's body (such has her head) to leave the cab and become trapped underneath in the event of a left tip. Stated otherwise, a conclusion that an available side restraint system would have prevented this injury is pure conjecture. Although Plaintiffs contend that no expert testimony is needed on this issue and that it is common sense, the Court disagrees. Unlike <u>Voss</u> where the plaintiff was able to testify that the unguarded portion of the same into contact with his hand, here, Plaintiffs are unable to say what caused Williams's legs to leave the occupant compartment or, taking into consideration the risk-utility analysis and the circumstances of this incident, what would have prevented her legs from leaving the occupant compartment without exposing her to other,

potentially greater injury. This same analysis equally applies to Plaintiff's negligence claim. Accordingly, the products liability and negligence claims based on a design defect are dismissed.

### 2. Failure to Warn

Defendants also move to dismiss the failure to warn claim. Plaintiffs claim that there were insufficient warnings concerning the increased dangers of a rollover, or loss of control, by operating the Prowler on paved surfaces. Plaintiff also argues that the warnings concerning this danger are vague, as it is unclear what is meant by a "highway" or what the phrase "seriously affect handing and control" mean.

Under New York law, a plaintiff may prevail on a defective warning claim if the plaintiff can establish that a manufacturer failed to provide adequate warnings regarding the use of a product and that this failure was the proximate cause of his injury. Voss, 59 N.Y.2d at 109. A plaintiff must demonstrate that (1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm. Liriano v. Hobart Corp., 92 N.Y.2d 232, 237 (1998). "As part of satisfying those elements, a plaintiff is 'required to prove that the product did not contain adequate warnings.'" Reed v. Pfizer, Inc., ——F.Supp.2d ——, 2012 WL 859729, at *3 (E.D.N.Y. March 14, 2012) (quoting Mulhall v. Hannafin, 45 A.D.3d 55 (1st Dep't 2007)).

The adequacy of the warning is generally a question of fact for the jury to decide, and "is not ordinarily susceptible to the drastic remedy of summary judgment." Urena v. Biro Mfg. Co., 114 F.3d 359, 366 (2d Cir. 1997). However, "there is no duty to warn of an open and obvious danger of which the product user is actually aware or should be aware as a

result of ordinary observation or as a matter of common sense." Feele v. W.W. Grainger, Inc., 302 A.D.2d 971, 972 (4th Dep't 2003). A plaintiff has a duty to both discover and avoid the injury in the exercise of reasonable and ordinary care.

In this case, Plaintiff was generally aware of the danger of rollovers in vehicles similar to the Prowler. There were ample warnings about the possibility of a rollover. Indeed, Plaintiff researched rollover issues when making the decision to purchase the Prowler. The narrower issue concerns the increased risk of rollover by operating the Prowler on paved roads. The Court finds that it cannot be said as a matter of law that it was obvious that there was an increased risk of rollover (or loss of control) by operating the Prowler on paved surfaces. As such, there may have been a duty to warn of such an increased danger. That leads to the next question - whether the warnings provided by Defendant were sufficient.

Here, there was an on-product warning that stated: "NEVER use on public highways where a collision with cars or trucks can occur." The Court agrees with Plaintiff that, while this warning may have advised of the dangers associated with a collision with cars or trucks, it did not advise of stability issues associated with operating the Prowler on a public highway. Thus, there were no on-product warnings concerning this danger.

The operator's manual had numerous other warnings. At the beginning of the manual, there is a clear statement "NEVER USE ON PUBLIC HIGHWAYS" along with an image showing that a user should not operate the Prowler on a public highway. This particular warning does not explain why the Prowler should not be used on a public highway or the potential risk of doing so. Page six of the operator's manual contains a section entitled "SAFETY ALERT." Within this section is an area with a heading reading "TO AVOID DEATH OR SEVERE PERSONAL INJURY:," followed by a list if bullet points. Among the list is the

following statement: "Always avoid paved surfaces.  This vehicle is not designed to be used on paved surfaces and may seriously affect handling and control."  On page 11 is a page entitled "Warnings."  On the page is a title stating "POTENTIAL HAZARD," under which it reads "Operating this vehicle on paved surfaces."  Under the title "WHAT CAN HAPPEN," the manual explains that "[t]his vehicle's tires are designed for off-road use only, not for use on pavement.  Paved surfaces may seriously affect handing and control of this vehicle and may cause the vehicle to go out of control."  Under the title "HOW TO AVOID THE HAZARD," the manual states: "Never operate this vehicle on any paved surfaces. . . ."  The entirety of page 11 is devoted to this particular risk.

   At deposition, Plaintiff stated that she did not read these warnings on pages 6 and 11.  As such, she cannot establish that the substantive language of the warnings caused her injury.  <u>Cuntan v. Hitachi KOKI USA, Ltd.</u>, 2009 WL 3334364 (E.D.N.Y. 2009).  Even if Plaintiff had read these warnings, the Court finds that these warnings are clear and explicit.  The page six warning that operating the Prowler on a paved surface "may seriously affect handling and control" is not vague.  The warning must be read it in its totality.  Again, the page boldly advises of safety alerts, warns of potential death or serious injury, and definitively advises the user to avoid paved surfaces.  It then reasonably advises that there could be serious handing and control concerns by operating on paved surfaces.  The reasonable and logical conclusion from this warning is that handling and/or control issues can occur by operating the Prowler on paved surfaces, which can cause death or serious injury.

   The page eleven warnings are even more clear and explicit.  In no uncertain terms, the page eleven warnings advise that the user "never operate" the Prowler on paved surfaces and clearly explains that the tires are not designed for paved surfaces, there could

be serious handling and control issues by using the Prowler on paved surfaces, and the result could be that the vehicle goes out of control.

This does not end the inquiry because Plaintiff may still prevail if the warnings were insufficiently prominent or dramatic. Here, the specific warnings that advise about control issues relating to operating the Prowler on paved surfaces are found on pages 6 and 11 of the operator's manual. There are no on-product warnings concerning this danger. Coupled with the evidence that Plaintiffs were permitted, or even encouraged, to test drive the Prowler on the pavement of the Gander Mountain parking lot, thereby possibly leading them to believe it was ok to drive on paved surfaces, the Court finds that there is a triable issue of fact concerning the prominence of the warnings.

### d.   Breach of Warranty

Defendants also move to dismiss the breach of warranty claim. The first argument is that this claim is untimely. Plaintiffs do not respond to this in their opposing memorandum of law. Defendants have submitted evidence of an invoice and shipping date of February 23, 2007, which is more than four years before Plaintiffs commenced this action. Accordingly, the breach of warranty claim is time barred.

### e.   Primary Assumption of the Risk

Defendant Gander Mountain moves for summary judgment claiming that Plaintiff assumed the risk. Under the doctrine of primary assumption of the risk, participants in a sporting activity properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation and may be held to have assumed those risks that are inherent or ordinary and necessary in the sport. Repka v. Arctic Cat, Inc., 20 A.D.3d 916, 919 (2005).

The fact that a particular product used by a participant in a sporting activity may prove to be defective is not an occurrence that is typically known, apparent, or reasonably foreseeable from the standpoint of the participant, nor is it ordinary, necessary or inherent in the activity itself.  Repka, 20 A.D.3d at 919.  Plaintiff cannot be said to have assumed a risk of which she may not have been aware because of defective warnings.  Accordingly, Defendants' motion on this ground is denied.

### f.     Motions to Preclude Evidence of Suicide/DWAI Conviction

Plaintiffs move to preclude evidence of Williams's suicide attempt and prior DWAI conviction.  The Court declines to address these motions at this time as they are more properly addressed in limine immediately prior to trial.

### g.     Motion for Indemnification

Lastly, Defendant Gander Mountain, as a retailer, seeks common law indemnification from Defendant Arctic Cat.  "A seller or distributor of a defective product has an implied right of indemnification as against the manufacturer of the product."  Godoy v. Abamaster of Miami, Inc., 302 A.D.2d 57, 62 (2003).  The Court will defer addressing the viability of any such indemnification claim until such time as Plaintiffs obtain a judgment against Defendant Gander Mountain, if any.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motions to preclude Lawrence Feer is GRANTED; Plaintiffs' motion to preclude Defendants' experts is DENIED with the exception that the Court will have a hearing concerning Dr. Raphael; Defendants' motion to dismiss the design defect and related negligence claims is GRANTED; and Defendants' motion to dismiss the breach of warranty claim is GRANTED.  In all other respects, Defendants' and

Plaintiffs' motions are DENIED.  The parties may raise the issues concerning Mrs. Williams's DWAI and suicide attempts in motions in limine prior to trial.  Defendant Gander Mountain may raise the issue concerning indemnification post trial in the event Plaintiffs obtain a verdict against it after trial.

IT IS SO ORDERED.

Dated: September 12, 2012

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge